**ORIGINAL**

FILED

NOV – 4 2014

U.S. COURT OF
FEDERAL CLAIMS

# In the United States Court of Federal Claims

No. 13-1016 C
Filed: November 4, 2014

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| MORRIS SHELKOFSKY, | * |
| | * |
| Plaintiff, *pro se*, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |
| | * |

Jurisdiction;
Motion to Dismiss, RCFC 12(b)(1),
  12(b)(6);
*Res Judicata*;
*Pro se*;
10 U.S.C. § 1201 (Regulars and
  members on active duty for more than
  30 days: retirement);
10 U.S.C. § 1202 (Regulars and
  members on active duty for more than
  30 days: temporary disability retired
  list);
10 U.S.C. § 1203 (Regulars and
  members on active duty for more than
  30 days: separation);
10 U.S.C. § 1208 (Computation of
  service);
10 U.S.C. § 1209 (Transfer to inactive
  status list instead of separation);
10 U.S.C. § 1210 (Members on
  temporary disability retired list:
  periodic physical examination; final
  determination of status);
10 U.S.C. § 12731 (Age and service
  requirements);
10 U.S.C. § 12738 (Limitations on
  revocation of retired pay);
28 U.S.C. § 1491 (Claims against United
  States generally; actions involving
  Tennessee Valley Authority).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Morris Shelkofsky,** Tallahassee, Florida, Plaintiff, *pro se*.

**Barbara E. Thomas,** United States Department of Justice, Civil Division, Washington, D.C.,
Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge*.

## I.    RELEVANT FACTUAL BACKGROUND.[1]

In 1997, while traveling in connection with his military service, Morris Shelkofsky, a former Judge Advocate General in the Air Force Reserve, was involved in a car accident that left him with substantial injuries. *See Shelkofsky II*, 534 F. App'x at 984.

On May 5, 1998, the United States Air Force ("Air Force") issued Special Order No. ACD-872 that released Mr. Shelkofsky from active duty as of May 26, 1998. Compl. Ex. F. On May 27, 1998, the Air Force assigned Mr. Shelkofsky to the Temporary Disability Retired List ("TDRL") with a physical disability rating of 40 percent.[2] Compl. Ex. F at 3. Approximately two years later, the Air Force reassessed Mr. Shelkofsky's condition and assigned him a stabilized disability rating of 20 percent. *See Shelkofsky II*, 534 F. App'x. at 984; Gov't Mot. App'x A4–A5.

On July 30, 2000, Mr. Shelkofsky was "removed from the TDRL and retired in the grade of Col[onel] by reason of physical disability per [Air Force Instruction] 36-3212 with entitlement to Disability Severance Pay." Compl. Ex. A.[3]  Soon thereafter, Mr. Shelkofsky signed a

---

[1]  The relevant facts were derived from: Plaintiff's December 23, 2013 Complaint ("Compl."), and exhibits attached thereto ("Compl. Ex. A–F"); Plaintiff's May 27, 2014 Response ("Pl. Resp."), and exhibits attached thereto ("Pl. Resp. Ex. 1–6"); an Appendix attached to the Government's April 25, 2014 Motion To Dismiss ("Gov't Mot. App'x. A1–A41"); and an Appendix attached to the Government's June 9, 2014 Reply ("Gov't Reply App'x. SA1–SA57"). The court's discussion is also informed by an Opinion and Order in *Shelkofsky v. United States*, 110 Fed. Cl. 15 (2013) ("*Shelkofsky I*"), *aff'd* 534 F. App'x 983 (Fed. Cir. 2013) ("*Shelkofsky II*").

[2]  When the military "determines that a member is unfit to perform the duties of his or her office, grade, rank, or rating because of physical disability that would qualify for disability retirement, except that the member's disability is not determined to be stable, then the member may be placed on the TDRL." U.S. DEP'T OF DEFENSE, DoD 700.14-R, VOLUME B: "MILITARY PAY POLICY – RETIRED PAY" § 110201 (2012), *available at* http://comptroller.defense.gov/Portals/45/documents/fmr/Volume_07b.pdf (last visited Oct. 27, 2014); *see also* 10 U.S.C. §§ 1201, 1202, 1210(b). If the member meets the qualifying criteria, he or she may remain on the TDRL for up to five years, but the member must undergo periodic physical examinations to determine whether the condition has stabilized. *See* 10 U.S.C. § 1210. If the member's condition stabilizes at a disability rating of 30 percent or more, the member is transferred to the PDRL. 10 U.S.C. § 1210(c).

[3]  Disability Severance Pay is "a lump-sum payment to a member of the Uniformed Services who is involuntarily separated from military service for minor physical disability and who does not qualify for [D]isability [R]etired [P]ay." U.S. DEP'T OF DEFENSE, DoD 700.14-R, VOLUME B: "MILITARY PAY POLICY – RETIRED PAY" § 040102(D) (2012), *available at* http://comptroller.defense.gov/Portals/45/documents/fmr/Volume_07b.pdf (last visited Oct. 27, 2014). A member who elects separation and receives Disability Severance Pay "is not entitled to any payment from the armed force from which he was separated for, or arising out of, his service before separation[.]" 10 U.S.C. § 1213.

Separation Agreement opting for Disability Severance Pay, instead of Active Reserve Status, that would have entitled him to Age-Based Retirement Pay on his 60th birthday on December 29, 2007.[4]  *See Shelkofsky II*, 534 F. App'x. at 984.

On July 31, 2000, the Air Force erroneously placed Mr. Shelkofsky on the Permanent Disability Retired List ("PDRL"), instead of discharging him.  *See id.* ("By an administrative error, the Air Force transferred [Mr. Shelkofsky] from the TDRL to the PDRL.  [Mr. Shelkofsky]'s stabilized disability rating at discharge was only 20 percent, and therefore should not have been transferred to the PDRL, which requires a rating of at least 30 percent.").

In early August of 2000, Mr. Shelkofsky contacted the Defense Finance and Accounting Service ("DFAS")[5] to inquire about entitlement to Disability Severance Pay that he selected but never received. Compl. ¶ 6.  The Air Force advised Mr. Shelkofsky that his July 31, 2000 discharge was in error and that the Air Force retired him as a Colonel based on years of service and transferred him to the PDRL. Compl. ¶ 6.

On March 5, 2008, shortly after turning 60 years old, Mr. Shelkofsky filed an application with the Air Force Board for Correction of Military Records ("AFBCMR") to correct his record and place him on the inactive status list ("ISL").[6]  *See Shelkofsky II*, 534 F. App'x at 984 ("In

---

[4] Pursuant to 10 U.S.C. § 12731(a), a reserve member may be entitled to Age-Based Retirement Pay, if he or she:

(1)     has attained the eligibility applicable under subsection (f) to that person;

(2)     has performed at least 20 years of service computed under section 12732 of this title; [and]

\* \* \*

(4)     is not entitled, under any provision of law, to retired pay from an armed force[.]

10 U.S.C. § 12731(a).

[5] The Secretary of Defense "created [DFAS] to standardize, consolidate, and improve accounting and financial functions throughout the [Department of Defense]. . . . DFAS pays all [Department of Defense] military and civilian personnel, retirees and annuitants, as well as major DoD contractors and vendors." DEF. FINANCE AND ACCOUNTING SERV., http://www.dfas.mil/pressroom/aboutdfas.html (last visited Oct. 27, 2014).

[6] If a reserve member "has at least 20 years of service computed under section 12732 of [title 10]" and "would be qualified for retirement under this chapter but for the fact that his disability is less than 30 percent," the reserve member may choose to be transferred to the ISL, rather than being separated and receiving severance pay. *See* 10 U.S.C. § 1209; *see also* 10 U.S.C. § 1203 (stating the required determinations of disability).  Once on the ISL, the reserve member may become eligible "to receive retired pay under section 12739 of [title 10] upon becoming 60 years of age." 10 U.S.C. § 1209.

3

2008, after reaching the age of 60, Plaintiff filed for a correction of his military records at the AFBCMR asking for placement on the [ISL]. If listed, he would be eligible to collect reserve retirement pay."). The AFBCMR granted his request "[a]fter verifying that [Mr. Shelkofsky] never received severance pay[.]" *Id.* On October 8, 2008, the Air Force issued Special Order No. ACD-00051, retroactively transferring Plaintiff from the TDRL to the ISL Reserve Section, effective July 30, 2000. Compl. Ex. B.

Subsequently, the DFAS discovered that Mr. Shelkofsky's placement on the PDRL was in error when it attempted to implement the AFBCMR's decision and transferred him to the ISL. *See Shelkofsky II*, 534 F. App'x at 984. On November 10, 2008, the DFAS informed Mr. Shelkofsky that, if his records were retroactively modified to reflect that he was placed on ISL as of July 30, 2000, he would be required "to pay back the disability retire[ment] pay he received for the previous seven years." *Id.* at 985.

On November 29, 2008, Mr. Shelkofsky asked the AFBCMR "to withdraw its approval of his request to correct his records and to move to the [ISL], explaining his desire not to incur such a debt." *Id.*; *see also* Pl. Resp. Ex. 3. On April 17, 2009, the AFBCMR granted Mr. Shelkofsky's request by Special Order No. ACD-01045 voiding the 2008 Special Order, so that the DFAS terminated Mr. Shelkofsky's Disability Retirement Pay.[7] Compl. Ex. C.

In 2010, however, Mr. Shelkofsky filed an application to reinstate the AFBCMR's voided 2008 Special Order to "obtain [Age-Based Retirement Pay], or in the alternative, for an adjustment to his assigned disability percentage so that he would be eligible to stay on the [PDRL]." *Shelkofsky II*, 534 F. App'x at 985. The DFAS denied that request, because it determined that final and conclusive prior proceedings settled his entitlement to Age-Based

---

[7] To qualify for Disability Retirement Pay, the Secretary of the Air Force must determine that the reservist "is unfit to perform the duties of [his or her] office, grade, rank, or rating because of physical disability." 10 U.S.C. § 1201(a). In addition, the Secretary must find that:

(1)     based upon accepted medical principles, the disability is of a permanent nature and stable;

(2)     the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and

(3)     either —

        (A) the member has at least 20 years of service computed under section 1208 of [title 10]; or

        (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination[.]

10 U.S.C. § 1201(b).

4

Retirement Pay. *Id.* Mr. Shelkofsky asked for reconsideration, "based upon a more recent 60% disability rating assessed by the Department of Veterans Affairs[]" ("VA"), but the AFBCMR found that evidence of eligibility must be reviewed at the time Mr. Shelkofsky was removed from the TDRL in 2000. *Id.*

## II.    PROCEDURAL HISTORY.

On November 14, 2011, Mr. Shelkofsky filed a Complaint in the United States Court of Federal Claims alleging that he was entitled to Age-Based Retirement Pay. *See Shelkofsky I*, 110 Fed. Cl. 15 (2013).   On March 20, 2013, the court granted the Government's Motion For Judgment On The Administrative Record, determining that the AFBCMR's decision to deny Mr. Shelkofsky retirement pay was not arbitrary, capricious, or contrary to law. *Id.* at 18–19. The court acknowledged that Mr. Shelkofsky may have been statutorily eligible for retirement pay but that "he waived his right to [A]ge-[B]ased [R]etirement [P]ay when he was separated from the Air Force in 2000." *Id.* at 18. On appeal, the United States Court of Appeals for the Federal Circuit affirmed. *See Shelkofsky II*, 534 F. App'x 983.

On December 23, 2013, Mr. Shelkofsky ("Plaintiff") filed a second Complaint in the United States Court of Federal Claims, alleging that he is entitled to Disability Retired Pay or, alternatively, to Disability Severance Pay. Compl. ¶ 1. The December 23, 2013 Complaint cited, as support: "twenty good years" of service; having reached his sixtieth birthday on December 29, 2007; and "total Reserve points of 5171 in the grade of Colonel O-6 from May 2009 and continuing throughout his life." Compl. ¶¶ 3–4, 15.  "Alternatively, [the Complaint alleged that Plaintiff] is entitled to Disability Retired Pay based on his 40 percent rating on the TDRL in the grade of Colonel O-6 from May 2009 and continuing throughout his life." Compl. ¶ 16. The Complaint invoked 10 U.S.C. § 12738 to limit revocation of PDRL pay that Plaintiff received. Compl. ¶ 13.  The Complaint also includes an alternative claim for Disability Severance Pay plus "interest from July 31, 2000, to the present." Compl. ¶ 18.

On April 25, 2014, the Government filed a Motion To Dismiss ("Gov't Mot."), arguing that the court does not have subject matter jurisdiction to adjudicate the claims alleged in the Complaint, because the events: occurred outside the applicable six-year limitations period; and in the alternative, are barred by the doctrine of claim preclusion. On May 27, 2014, Plaintiff filed a Response ("Pl. Resp.").  On June 9, 2014, the Government filed a Reply ("Gov't Reply").

## III.    DISCUSSION.

### A.    Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "'can fairly be interpreted as mandating compensation by the Federal Government[.]'" *United States v. Mitchell*, 463 U.S. 206, 217 (1983) (quoting *Testan*, 424 U.S. at 400). And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

In this case, Mr. Shelkofsky relies on money-mandating sources of law for the Disability Retirement Pay and Disability Severance Pay claims in his December 23, 2013 Complaint. *See Fisher*, 402 F.3d at 1174 (stating that "[10 U.S.C.] § 1201 is understood as money-mandating"). Thus, the court has jurisdiction.

## B. Standards of Review for *Pro Se* Litigants.

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, "[t]he court must assess whether the complaint adequately states a claim and whether plaintiffs can allege 'facts plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Hutchens v. United States*, 89 Fed. Cl. 553, 562 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The plaintiff's factual allegations must be substantial enough to raise the right to relief "'above the speculative level,'" accepting all factual allegations in the complaint as true and "'indulg[ing] all reasonable inferences in favor of the non-movant.'" *Id.* (quoting

6

*Twombly* 550 U.S. at 555; *Chapman Law Firm v. Greenleaf Constr. Co.*, 490 F.3d 934, 938) (Fed. Cir. 2007)).

     *Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers[]"). This court traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke*, 60 F.3d at 799.

## C.    Whether The Claims In The December 23, 2013 Complaint Are Barred By The Statute Of Limitations.

### 1.    The Government's Argument.

     The Government argues that the United States Court of Federal Claims does not have jurisdiction to adjudicate the military Disability Retirement Pay or Disability Severance Pay claims alleged in the December 23, 2013 Complaint, because they are "barred unless the petition thereon is filed within six years after such claim[s] first [accrue]." 28 U.S.C. § 2501. This is so, because Plaintiff's claims accrued on July 10, 2000 when the Air Force issued Special Order No. ACD-868 discharging him from the Air Force Reserve with disability. Gov't Mot. at 12. That Order presented Plaintiff with two options: (1) be placed on the ISL; or (2) be separated with severance. *See Shelkofsky II*, 534 F. App'x. at 984. Plaintiff elected the severance package option. *See id.*; Compl. ¶ 5. Therefore, the Air Force's liability was fixed on July 10, 2000, the date of Plaintiff's separation, requiring Plaintiff to institute an action before the limitations period expired on July 10, 2006. Plaintiff did not, and therefore, his claim is now time-barred. Gov't Mot. at 12.

     The December 13, 2013 Complaint does not allege that the Air Force concealed any relevant facts from Plaintiff. Gov't Mot. at 14. Instead, Plaintiff's delay in asserting a claim was the result of "his decision to run the risk that he was receiving unauthorized benefits subject to discontinuance," particularly since "[Plaintiff] knew that the monthly benefits he was receiving did not match the benefits—[Disability] [S]everance [Pay]—that had been ordered." Gov't Mot. at 14. Consequently, Plaintiff's reliance on the "inherently unknowable" injury exception is unsupported, in light of his communications with the DFAS. Gov't Reply at 2. "[Plaintiff's] current assertion that he was told by an unnamed DFAS employee in August 2000 that he had been placed on the PDRL based on years of service is strikingly inconsistent with [Plaintiff's] . . . past statements and behavior." Gov't Reply at 7. "[Plaintiff's] description . . . of his alleged conversation with DFAS does not even match the one contained in the affidavit he cites as supporting evidence." Gov't Reply at 4–5 (citing Pl. Resp. Ex. 1).

     In addition, even if Plaintiff contacted the DFAS in 2000, he knew or reasonably should have known that the Secretary of the Air Force did not consider Plaintiff eligible for Disability Retired Pay. Gov't Reply at 4. As the June 2000 correspondence between DFAS and Plaintiff evidences, Plaintiff needed at least 20 years of service to qualify for retirement benefits, pursuant

to 10 U.S.C. § 1208. The July 10, 2000 Special Order NO. ACD-00051 informed Plaintiff that he was discharged with 13.68 years of service. Compl. Ex. B.

Therefore, "[Plaintiff] could not have reasonably relied upon the statements allegedly made to him by a DFAS employee," because his eligibility for permanent retirement pay was not determined by the DFAS. Gov't Mot. at 4. Instead, eligibility is determined by the Secretary of the Air Force, and the Secretary never made that finding. Gov't Mot. at 4. Finally, Plaintiff's allegation that he believed he was placed on the PDRL based on years of service conflicts with prior correspondence, *i.e.*, a 2008 request for Age-Based Retirement pay for "never [receiving] the severance pay referred to" in his separation order); an October 2009 letter to the AFBCMR (admitting that he "never should have been retired on the PDRL" given his 20 percent disability rating and lack of 20 years of service); and a May 2011 letter to the AFBCMR (representing that he had been on the TDRL until May 19, 2003). Gov't Reply at 5–6.

## 2.    The Plaintiff's Response.

Plaintiff responds that the Tucker Act's six-year statute of limitations should run from when the DFAS stopped paying Disability Retired Pay in May 2009 and informed Plaintiff that he was retired based on years of service, so that the December 23, 2013 Complaint is timely. Pl. Resp. at 1. Plaintiff also contends that the Motion to Dismiss misstates the accrual suspension rule, in light of *Holmes v. United States*, 657 F.3d 1303 (Fed. Cir. 2011) (stating that the inherently unknowable test "includes an intrinsic reasonableness component"). Pl. Resp. at 5. Plaintiff's injury was "inherently unknowable" given that the documents provided by the Air Reserve Personnel Center ("ARPC") were "unavailable to Plaintiff prior to the computer database upgrade of 2011." Pl. Resp. at 2–3.

Plaintiff's "continuous active service in enlisted and Regular officer status and in Reserve Officer status comprise a total of 7,723 points . . . . When divided by the 360 divisor of 10 U.S.C. §§ 1208(b) and 12733, the dividend is 21.45 years, [which] . . . fulfills the 20 years requirement of 10 U.S.C. § 1201." Pl. Resp. at 3. The November 10, 2008 letters from DFAS establishes Plaintiff's entitlement to Disability Retired Pay, if he paid back the PDRL benefits. Pl. Resp. at 2; Pl. Resp. Exs. 2, 3. Plaintiff was "removed from the TDRL by operation of law due to the expiration of the 5 year statutory limit[.]" Pl. Resp. at 4. "[B]ased on the permanent nature and stability of the 40% disability rating, Plaintiff's name should have been removed from the TDRL." Pl. Resp. at 4. The statute of limitations runs from the date when the DFAS informed Plaintiff that he was retired based on years of service and until May 2009 when DFAS stopped paying Disability Retired Pay, so that the December 23, 2013 Complaint is timely. Pl. Resp. at 1–2.

## 3.    The Court's Resolution.

Plaintiff seeks either reinstatement of Disability Retirement Pay or the original Disability Severance Pay option selected under the Separation Agreement, and requests the court to find that the accrual suspension rule delays the accrual of both Plaintiff's Disability Retirement Pay and Disability Severance Pay claims under the Tucker Act's statute of limitations. Compl. at p. 5; Pl. Resp. at 5–7. Under the accrual suspension rule, "accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant

8

knew or should have known that the claim existed." *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003) *(en banc)*.

### a.   Whether Plaintiff's Disability Severance Pay Claim Is Time-Barred.

As to Plaintiff's Disability Severance Pay claim, the Air Force issued Special Order ACT-00868 on July 10, 2000, that informed Plaintiff that he was "removed from the [TDRL] and discharged in the grade of Col[onel] by reason of physical disability . . . with entitlement to Disability Severance Pay." Compl. Ex. A. This entitled Plaintiff to a "lump-sum payment." DOD 700.14-R, VOLUME B: "MILITARY PAY POLICY – RETIRED PAY" § 040102(D) (2012). Instead, Plaintiff was erroneously classified and paid due to the Government's error in placing him on the PDRL. The Government's actions in paying monthly payments and Plaintiff's seven years' acceptance of those payments run directly counter to either of the Separation Agreement's options. During this time period, Plaintiff was aware that he had not received his "lump-sum payment" for Disability Severance Pay, as evidenced by the fact that in early August 2000, he "contacted the [DFAS] . . . to inquire about his Disability Severance Pay" but continued to receive the erroneous Disability Retirement Pay through April 2009. Compl. ¶¶ 6, 9.

The Tucker Act provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "This six-year limitations period is jurisdictional and may not be waived or tolled." *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1380–81 (Fed. Cir. 2012) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136–39 (2008)). A claim is deemed to have accrued once all events necessary for a plaintiff to bring suit have occurred, *i.e.*, when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966); *see also Goodrich v. United States*, 434 F.3d 1329, 1333 (Fed. Cir. 2006) ("[A] claim accrues when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.") (internal citations omitted). But, under the accrual suspension rule, a claim cannot accrue until the plaintiff "knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319 (holding that a plaintiff must show either "that the defendant has concealed its acts with the result that plaintiff was unaware of their existence" or that "its injury was 'inherently unknowable' at the accrual date[]") (internal citations and quotation marks omitted).

In this case, the July 10, 2000 Special Order ACD-00868 informed Plaintiff of his entitlement to Disability Severance Pay, and the Complaint states that Plaintiff was aware that he had not received a Disability Severance Pay check. Compl. ¶¶ 6, 9. Therefore, the court has determined that Plaintiff either knew, or reasonably should have known of the error within a short time after July 10, 2000. *See Martinez*, 333 F.3d at 1319; *Holmes*, 657 F.3d at 1320–21.

Therefore, the court has determined that Plaintiff's claim for Disability Severance Pay is time-barred under the Tucker Act.

### b.     Whether Plaintiff's Disability Retirement Pay Claim is Time-Barred.

As to Plaintiff's Disability Retirement Pay claim, the United States Court of Federal Claims applies the "first competent board" rule to determine whether a Disability Retirement Pay claim is time-barred. *See Chambers v. United States*, 417 F.3d 1218, 1225 (Fed. Cir. 2005).[8] Under this rule, the United States Court of Federal Claims has jurisdiction over Disability Retirement Pay claims once "a military board evaluates a service member's entitlement to such retirement in the first instance." *Id.* at 1225 (internal citations and quotation marks omitted). A

_____

[8] The first competent board rule, in its entirety, states:

(a).  The judicial claim for [Disability [R]etirement [P]ay does not accrue on release from active duty but rather on final action of a board competent to pass upon eligibility for [D]isability [R]etirement [Pay] (or upon refusal of a request for such a board).

(b).  Normally, the Retiring Board is the proper board, but where the claimant has not had or sought a Retiring Board, his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the Retiring Board as the proper tribunal to determine eligibility for [D]isability [R]etirement [Pay]).

(c).  A board's action (or failure to act) is not final if (i) the claimant has been misled, (ii) the board's decision is tentative and invites reopening, (iii) the armed service itself reopens the case, or (iv) there are other circumstances depriving the action or non-action of finality.

(d).  Once a final decision is had, the claim accrues, the limitations period begins to run, and there is no tolling of the statute by reason of further applications to other boards or agencies (including the Correction Board).

(e).  Once a final decision is had, adverse determinations by other boards, including the Correction Board, do not give rise to a new cause of action.

(f).  A claim for entitlement to [D]isability [R]etirement [Pay]—of the type requiring discretionary action by a board and the Secretary—is not a "continuing claim" but accrues as a whole (once it accrues). However, other types of pay claims not dependent on a board finding—including claims for increased retirement pay because of new legislation, etc.—are "continuing" claims.

*Friedman v. United States*, 159 Ct. Cl. 1, 24–25 (Nov. 7, 1962); *see also Chambers*, 417 F.3d at 1225 n.2 ("A Retiring Board, now called Physical Examination Board or PEB, determines a service member's fitness for duty and entitlement to [D]isability [R]etirement [Pay] once a Medical Examination Board or MEB finds the soldier does not meet the [service]'s standards for retention under its regulations.").

military board is competent if it is "statutorily authorized" to hear the claim. *See Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990).

      In this case, by June 12, 2000, multiple competent boards had issued final decisions as to Plaintiff's claims for Disability Retirement Pay. Specifically, the June 12, 2000 Memorandum from the Director of the Secretary of the Air Force Personnel Counsel references prior decisions by the Formal Physical Evaluation Board and Informal Physical Evaluation Board,[9] and concurs with their recommendations "for a disposition of Separation with Severance Pay and a disability rating of 20 percent." Gov't Mot. App'x at A4 (Memorandum for HQ AFPC/DPPS). This decision barred Plaintiff from receiving any additional Disability Retirement Pay. *See* 10 U.S.C. § 1213 (stating that a member who elects separation and Disability Severance Pay "is not entitled to any payment from the armed force from which he was separated for, or arising out of, his service before separation").[10]

      Although Plaintiff received Disability Retirement Pay, without entitlement, for seven years, Plaintiff's claims for Disability Retirement Pay accrued on the date the first competent board issued a final decision determining that Plaintiff was not entitled to Disability Retirement Pay. Therefore, Plaintiff's claims for Disability Retirement Pay accrued no later the June 12, 2000, and the six-year statute of limitations period under Section 2501 expired no later than June 12, 2006.

      The court cannot extend the accrual period of Plaintiff's Disability Retirement Pay claim under the "continuing claims doctrine" to the cessation of Disability Retirement Pay in 2009, because those pay claims are "of the type requiring discretionary action by a board and the Secretary." *Friedman*, 159 Ct. Cl. at 25. As such, Plaintiff's Disability Retirement Pay claim "is not a 'continuing claim' but accrues as a whole (once it accrues)" by the Physical Evaluation Board's decision. *Id.*; *see also John R. Sand & Gravel Co.*, 552 U.S. at 139 (holding that Section 2501 is jurisdictional and that claims shall be barred "unless filed within six years of the time it first accrues").

      For these reasons, Plaintiff's Disability Severance Pay claim is time-barred.

---

     [9] These Physical Evaluation Boards are competent for the purposes of the first competent board rule. *See Chambers*, 417 F.3d at 1225 n.2 ("[A] Physical Examination Board[,] or PEB, determines a service member's fitness for duty and entitlement to [D]isability [R]etirement [Pay] once a Medical Examination Board or MEB finds the soldier does not meet the [service]'s standards for retention under its regulations.").

     [10] Plaintiff acknowledged that he "never should have been retired on the PDRL," because his "percentage of disability from the final physical evaluation board (FPEB) was only 20% and [he] did not have 20 years of service." Gov't Reply App'x at SA 26.

**D.     Whether The Claims In The December 23, 2013 Complaint Are Claim-Precluded.**

**1.     The Government's Argument.**

In the alternative, the Government argues that Plaintiff's claims are precluded as a matter of law, because Plaintiff should have asserted them in *Shelkofsky I*, and a new theory of recovery does not create a new claim. Gov't Mot. at 15.

The core operative facts alleged in Plaintiff's November 14, 2011 Complaint are the same as those alleged in Plaintiff's December 23, 2013 Complaint: *i.e.*, Plaintiff was separated from the Air Force in 2000 with a 20 percent disability rating; Plaintiff elected to receive Disability Severance Pay; the Air Force erred in transferring Plaintiff to the PDRL and in issuing Disability Retired Pay rather than Disability Severance Pay; the error became apparent when Plaintiff asked for Age-Based Retirement Pay; and after several interactions with the AFBCMR, the erroneous pay was discontinued. Gov. Mot. at 16.

In addition, "[n]othing prevented [Plaintiff] from bringing his current claims in *Shelkofsky I*; indeed, he *did* raise numerous arguments related to his asserted entitlement to [Disability Retirement Pay] in that litigation." Gov't Mot. at 17. Plaintiff further misapplies the doctrine of claim preclusion, as "[Plaintiff] appears to believe that his current claims are not precluded[,] because [D]isability [R]etired [P]ay and [D]isability [S]everance [P]ay are distinct from retirement at age 60." Gov't Reply at 9. Likewise, Plaintiff does not appear to understand that claim splitting, based upon different legal theories, is not allowed. Gov't Reply at 10. Plaintiff's attempt to distinguish the roles of the military departments is irrelevant to demonstrating that the current claims alleged are not derived from the same set of facts as *Shelkofsky I*. Gov't Reply at 8–9.

**2.     The Plaintiff's Response.**

Plaintiff's responds that the Government has made incorrect statements to establish a common core of operative facts. Pl. Resp. at 7. The pending claims rely upon the "facts in the retirement documents provided [by] the ARPC to DFAS and the attachments to this Response to the M[otion] T[o] D[ismiss]." Pl. Resp. at 10. "DFAS made a correct decision based on the retirement documents provided by ARPC and placed Plaintiff on the PDRL on July 30, 2000, because those documents showed Plaintiff to be a Reservist who had accumulated 21.45 years under 10 U.S.C. § 1208(b)." Pl. Resp. at 9 (citing Compl. Ex. F at 1–3). The AFBCMR's revocation of its 2008 Special Order exhausted the five year period that Plaintiff was allowed to remain on the TDRL and "rendered the 40% disability rating to be of a permanent nature and stable." Pl. Resp. at 10; *see also* Compl. Ex. C. As such, the Disability Retirement Pay claim is, at most, "tangentially" related to the current cause of action. Pl. Resp. at 11. "The attempted insinuation of Retirement at Age 60 into this lawsuit is improper because that cause of action was determined in an earlier [United States Court of Federal Claims] case and [a United States Court of Appeals for the] Federal Circuit appeal." Pl. Resp. at 11.

In addition, the Government misunderstands the structure and operation of the Air Force's disability evaluation system. Pl. Resp. at 7. "The Air Force has had no responsibility for making payments of Disability Retired Pay, Disability Severance Pay, or Reserve Retired Pay at

12

Age 60." Pl. Resp. at 7. DFAS has authority over retirement pay for personnel of all the military departments. Pl. Resp. at 7. The July 10, 2000, October 8, 2008, and April 17, 2009 Special Orders confirm "the validity of the DFAS's decision to place Plaintiff on the PDRL effective July 30, 2000." Pl. Resp. at 8–9. As such, the "propositions stated as a common core of facts do not support application of the doctrine of claim preclusion," as this lawsuit is based on correspondence and comments between ARPC and DFAS. Pl. Resp. at 10.

### 3.    The Court's Resolution.

As a matter of law, claim preclusion bars a suit if: "(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000); *Bowers Inv. Co. v. United States*, 695 F.3d 1380, 1384 (Fed. Cir. 2012); *see also Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed. Cir. 1983). In both *Shelkofsky I* and in the present case, the first element is clearly satisfied: the parties involved are Plaintiff and the United States. The second element is also satisfied, as the United States Court of Federal Claims previously entered judgment on the merits, determining that the AFBCMR's decision was not arbitrary, capricious, or contrary to law. *See Shelkofsky I*, 110 Fed. Cl. at 18, *aff'd*, 534 F. App'x 983. Therefore, the issue presented is whether "the second claim is based on the same set of transactional facts as the first." *Jet, Inc.*, 223 F.3d at 1362.

In *Shelkofsky I*, Plaintiff disputed the AFBCMR's decision not to modify the method in which he was compensated after separation from the military. *See Shelkofsky II*, 534 F. App'x at 987. The transactional facts in that case arose from the same events relevant here, *i.e.*, Plaintiff was separated from the Air Force in 2000 with a 20 percent disability rating; the July 10, 2000 separation notice informed Plaintiff that he could either select to be placed on the ISL and wait for age 60 retirement eligibility or receive a severance pay option. *See Shelkofsky II*, 534 F. App'x at 984. Neither option, however, entitled Plaintiff to receive immediate monthly payments from the Government after initial election of the Disability Severance Pay, albeit by the Government's error. *Id.* Plaintiff, therefore, was transferred to the PRDL, where for seven years he collected monthly disability checks that were terminated in 2009. Compl. ¶¶ 4–10. Therefore, when Plaintiff filed the Complaint in *Shelkofsky I* in 2011, Plaintiff had at least two years notice that *no benefits* were being awarded.

Although Plaintiff contends that "[D]isability [R]etire[ment] [P]ay and [D]isability [S]everance [P]ay are distinct from retirement at age 60," that fact does not preclude the court from finding that Plaintiff's Disability Retirement Pay and Disability Severance Pay claims are precluded.[11]   Claim preclusion bars claims in a second suit arising from the same set of

---

[11] In *Shelkofsky I*, Plaintiff "seem[ed] to want either reserve retirement pay or disability retirement pay[,]" but "he d[id] not seek severance pay." 110 Fed. Cl. at 17. But, Plaintiff did not articulate a claim for Disability Retirement Pay in his November 14, 2011 Complaint. *Id.* at 18. Nevertheless, the proper inquiry is not whether Plaintiff sought Disability Retirement Pay or Disability Severance Pay as relief in *Shelkofsky I*, but rather whether Plaintiff's Complaints arise from the same set of operative facts.

transactional *facts*, not the legal basis nor the arguments, in the first suit. *See, e.g., United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011) ("Two suits are for or in respect the same claim, precluding jurisdiction in the [United States Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit."); *see also Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 478 (Fed. Cir. 1991) ("'[C]laim' does not mean merely 'argument' or 'assertion,'" but "is used in the sense of the facts giving rise to the suit."); *Aleyska Pipeline Serv. Co. v. United States*, 688 F.2d 765, 769 (Ct. Cl. 1982) ("[C]laim splitting cannot be justified on the ground that the two actions are based on different legal theories[.]").

Because Plaintiff's Disability Retirement Pay and Disability Severance Pay claims arose from the same core operative facts as those alleged in *Shelfkofsky I*, these claims are barred by claim preclusion.

## IV. CONCLUSION.

For these reasons, the Government's April 25, 2014 Motion to Dismiss is granted. *See* RCFC 12(b)(1), 12(b)(6). Accordingly, the Clerk is directed to dismiss the December 23, 2013 Complaint.

IT IS SO ORDERED.

SUSAN G. BRADEN
Judge

---

Moreover, in *Shelkofsky I*, the court observed that its review of Plaintiff's Disability Retirement Pay claim was limited to the AFBCMR's decision and the Administrative Record. *See Shelkofsky*, 110 Fed. Cl. at 18. Precedent limits judicial review by this court to the AFBCMR's decision under a deferential standard: whether the decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Lewis v. United States*, 458 F.3d 1372, 1376 (Fed. Cir. 2006) (citing *Martinez*, 333 F.3d at 1314). Even if this claim survives claim preclusion, which it does not, the court can neither review material that Plaintiff did not first present to the AFBCMR, nor find that the AFBCMR's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *See Shelkofsky I*, 110 Fed. Cl. at 18 (internal citations omitted).